## In re WATKINSON et al.

(District Court, E. D. Pennsylvania. February 21, 1906.)

### No. 1,184.

1. BANKRUPTCY—PROVABLE DEBTS—RIGHT OF STOCKHOLDERS TO PROVE DEBT TO CORPORATION.

A claim against the estate of a bankrupt, based on the alleged payment, by the claimant and others represented by him, of an indebtedness of the bankrupt, disallowed where it appeared that the indebtedness was that of a corporation in which claimants and the bankrupt were stockholders; that it was not paid by claimants individually, but by a second corporation, in which they were stockholders, which charged it to the first, and afterwards became itself insolvent; and that the only liability of the bankrupt was to the first corporation on his stock subscription.

2. LIMITATION OF ACTIONS—PART PAYMENT.

Payments made by a debtor of a corporation to an officer of the corporation, but not expressly stated at the time to be intended to apply on such indebtedness, and not accounted for to the corporation by the payee, do not suspend the running of the statute of limitations against the debt.

3. BANKRUPTCY—PROVABLE DEBTS.

A purchaser at receiver's sale of the accounts of an insolvent corporation, which include an account against another corporation also insol-

vent, is not vested with the right to prove against the estate in bankruptcy of a stockholder in the debtor corporation a claim for an indebtedness on his stock subscription.

In Bankruptcy. On review of referee's report on the claim of Frank M. Fargo against the individual estate of George Watkinson. The following is the opinion of Theodore M. Etting, referee:

The ground upon which this claim is based is payment of the debts of the Mutual Rubber Company, by the claimant and others in whose behalf he claims, under an understanding and agreement with George Watkinson, one of the above-named bankrupts, to pay back to the claimant, for his benefit and that of his associates, one-half of the amount which they advanced and paid; the debts in question being due by the company on winding up its business. The claimant, his associates, and Watkinson were subscribers to the entire capital stock of the company, upon which nothing had been paid, and were liable pro rata. The amount of Watkinson's liability was $99,000. The amount due by the claimant and his associates was $100,100; each of them being liable for one-fifth of that amount. In computing the amount claimed to be due, Watkinson is charged with one-half of the amount advanced. The date of payment as given is January 1, 1889, and the amount paid as $52,000. Watkinson is credited with certain sums as payments on account, which diminish the amount of his debt, and which, if they should be regarded as payments on account, toll the statute of limitations. The claim is filed by the claimant as trustee for himself and his associates. In the course of testimony taken on a petition for re-examination of the claim it appeared that the true date of payment was January 1, 1893, and the claim has been accordingly reduced. The amount now claimed is $18,873.75, with interest from December 26, 1901, to date of payment.

The claim is against the individual estate of George Watkinson. The only question, however, passed upon by the referee is whether or not the claim as presented is a lawful claim, entitled to be proved. If this question should upon appeal be answered in favor of the claimant, it can be determined hereafter whether or not he is entitled to be paid in full out of the proceeds of sale of the real estate. Allowance of the claim is opposed by the trustee on the ground (1) that Watkinson is not indebted to Frank M. Fargo, the claimant, or to C. H. Fargo & Co.; (2) that, if any indebtedness exists, it is an indebtedness to the rubber company; (3) that the debt is barred by the statute of limitations. No objection to the allowance of the claim as presented was made by any creditor or by the trustee. The objections above referred to followed the allowance of the claim. The trustee also filed a petition for re-examination of the claim and for the examination of the claimant upon the allowance of which the claimant, as well as George Watkinson, Samuel N. Fargo, and E. A. Fargo were examined. The claim now comes before me for re-examination with such light as may be afforded by the testimony. Whilst no claim has been filed by the Mutual Rubber Company, and whilst the only claim filed, growing out of the payment of Watkinson's share of the debts of the rubber company, is the claim now under consideration, a decision of the claimant's rights cannot be arrived at without a knowledge of the history of the rubber company, and an understanding of the circumstances surrounding the payments of its debts.

The company was, I find, chartered in 1887 under the laws of Illinois. The subscribers to its capital stock were George Watkinson, C. H. Fargo, C. E. Fargo, S. N. Fargo, and Frank M. Fargo. The authorized capital stock was $200,000, divided into 2,000 shares of $100 each. Watkinson subscribed to 999 shares. The remaining 1,001 shares were subscribed for by the persons above named, each of whom, with the exception of Frank M. Fargo, who subscribed to 201 shares, subscribed to 200 shares. Under the terms of their subscription the subscribers severally agreed to pay the company $100 for each share of stock. The company began business January 1, 1888. The business in which it engaged was that of selling a certain line of rubber goods for Watkinson, who was then in business in New Haven, and for the firm of C. H.

Fargo & Co., then in business in Chicago. Frank M. Fargo, the claimant, was the secretary and treasurer of the company. Its financial management was in the hands of C. H. Fargo and George Watkinson. Watkinson was also general manager of the company. The company began business without any capital and on a loan effected by the sale or discount of its paper indorsed by the firm of C. H. Fargo & Co. After the company had been in business for about six months the enterprise was abandoned and its assets were taken over by the firm of C. H. Fargo & Co. in liquidation, before any subscriber to the capital stock had paid anything on account of his subscription. The winding up of the company remained in the hands of the firm of C. H. Fargo & Co. from July of 1888 until January 1, 1890, on and after which date the firm of C. H. Fargo & Co. was succeeded by C. H. Fargo & Co., a corporation organized for the express purpose of taking over the business of the firm of C. H. Fargo & Co., and the shares of which were, when originally issued, divided between the persons theretofore carrying on business as a firm in the proportion of their respective interests in the firm. The corporation of C. H. Fargo & Co., upon coming into existence, acquired as a purchaser the book accounts of the firm of C. H. Fargo & Co., and whilst there was no express assignment of this or of any particular debt there is no evidence which indicates that the debt in question was excepted or intended to be excepted. The corporation of C. H. Fargo & Co. took over the assets of the firm. It had no other capital, and amongst the assets thus taken over was the liability of the Mutual Rubber Company to the firm for money advanced in excess of receipts, the amount of which as of January 1, 1890, I am unable to state definitely, because neither the books of the rubber company, of the firm of C. H. Fargo & Co., or of the corporation of C. H. Fargo & Co. are in existence, and no evidence which supplies the want arising from the absence of the books has been produced.

No evidence has been presented showing that the assets were taken over under any agreement or understanding with Watkinson, or that there was then any agreement with him as to the repayment of money advanced or paid out, nor is there any evidence that a call was made on the subscribing stockholders for the payment of anything on account of their subscriptions, or that a meeting of the stockholders of the rubber company was held for that purpose between July of 1888 and January, 1890. There is evidence, however, that on January 1, 1893, the corporation of C. H. Fargo & Co. had arrived at an ascertainment of the amount required for the payment of the creditors whose debts had not theretofore been paid, and that some time thereafter Watkinson received notice of a meeting of the rubber company. The purpose of this meeting is not disclosed in the correspondence or in the testimony, but it does appear that Watkinson in writing to Frank M. Fargo on April 21, 1893, said in substance that he regretted that he would be unable to attend the Mutual Rubber Company's meeting, asked what his share of the loss was, said he would accept Fargo's estimate, and pay before long. In a letter to Fargo, under date of February 1, 1894, Watkinson further says: "I received your previous letter in due time. My idea in regard to the Mutual loss is to pay my share of it—that is, one-half—as soon as I can." These two letters contain the only evidence of any agreement between Watkinson and Fargo with respect to the repayment of the money advanced. I am unable to see how this correspondence can be regarded as evidence of an agreement or understanding with Watkinson to repay to Frank M. Fargo for his benefit and for the benefit of his associates the money which they had advanced. In the first place, they had not as individuals advanced any money. Whatever money had been advanced by the firm of C. H. Fargo & Co. had ceased to be a debt due the firm and was at the date in question a debt due C. H. Fargo & Co., the corporation, and was carried on the books of that corporation, not as the debt of Watkinson, but as the debt of the rubber company. Fargo was treasurer of both companies. The only Mutual Rubber Company asset not yet exhausted was the liability of its shareholders to the company under the terms of their subscription agreement, the amount of which, if collectible, was sufficient to pay outstanding debts, whether due to strangers or to the corporation of C. H. Fargo & Co. A meeting of the

rubber company was held, of which Watkinson was apprised, presumably by Fargo, and the correspondence must, I think, be read and considered with these thoughts in mind. To whom the money was to be paid is not stated in the correspondence. To whom was it due, and, when part payment was made pursuant to the above purpose, to whom was the money paid? By the terms of his subscription Watkinson was liable to the rubber company. When part payment was made pursuant to the above promise, it was made by checks drawn to the order of the rubber company which were indorsed over by that company to the Fargo corporation and applied by the Fargo corporation, not by giving Watkinson credit, but by diminishing in each case as the checks were received the amount of the rubber company's indebtedness to C. H. Fargo & Co., the corporation. The debts of the rubber company remaining unpaid as of January 1, 1893, including an indebtedness of $9,297.58 due the firm of C. H. Fargo & Co., were paid by C. H. Fargo & Co., the corporation, before the close of 1893. The debts of the rubber company, over and above the amounts received in liquidation, were $52,768.67. This indebtedness, with the exception of a debt of $1,886.79 due Watkinson by the company, was assumed and paid by C. H. Fargo & Co., the corporation. The amount due by Watkinson and others as subscribers to the capital stock of the company was an asset applicable to the payment of the creditors' debts, and Watkinson was obligated to pay to the corporation one-half of the amount due as of January 1, 1893. The only portion of this payment made by him is $12,000. There has, therefore, been a loss to the corporation of C. H. Fargo & Co. by reason of Watkinson's failure to pay his indebtedness in full. Apart from the payment of $12,000 by Watkinson, the entire loss has fallen on the corporation of C. H. Fargo & Co. By 1893 Frank M. Fargo and his brothers had become the owners of the entire capital stock of the Fargo corporation, but, even though this be true, a debt due to the corporation would not be due to its stockholders, nor would they have any right to recover in their own behalf on a corporate cause of action. Button v. Hoffman, 61 Wis. 20, 20 N. W. 667, 50 Am. Rep. 131.

If the partnership is entitled to be paid, the claim should have been filed on behalf of the firm, and Samuel N. Fargo should be included in the distribution. If the corporation of C. H. Fargo & Co. is entitled to be paid, then the claim should have been filed by the receiver of that corporation, and distribution made amongst its creditors. But, apart from the reason before stated, there can be no recovery as against the bankrupt estate, because the debt, to whomsoever due, is barred by the statute of limitations. In the claim filed Watkinson is credited with certain payments which have not been previously referred to, and which, if properly allowable as payments on account, would toll the statute. The first is a note sent to Frank M. Fargo by Watkinson for $898 in February of 1899. Fargo, who was Watkinson's son-in-law, after the failure of the Fargo corporation moved to New York and went into business there on his own account. The evidence is that the note in question was sent to Fargo by Watkinson for the purpose of enabling him to pay one of his own creditors, and that it was used by him for that purpose. The second credit allowed Watkinson in the claim is for $4,000 given him in cash by Irving Watkinson, his brother-in-law, by directions of George Watkinson, his father-in-law, a week before the filing of the petition in bankruptcy.

The evidence as to what was said and done on the latter occasion as given by Fargo is that on December 22d, or thereabouts (he being at the time in the employ of the bankrupt firm), was told by Irving Watkinson that "there was about to be trouble, which he understood to mean business trouble, and that Mr. Watkinson would see that he had some cash." A few days thereafter Irving Watkinson give him $4,000 in cash. The money thus given was, according to Fargo's testimony, used by him for living expenses. The bankrupt was called as a witness for the claimant. He does not testify that anything was said by him, at the time, to designate upon what account the note was sent or the money given to Fargo, but he does say in positive terms, in answer to the following question put to him by counsel for claimant: "Upon what account was the note and the $4,000 paid?"—that

both were paid on account of his indebtedness to the rubber company, and it also is true that Fargo in the course of his evidence says that this note was "simply an amount to apply on that claim." But Fargo's testimony on this point is not, I think, material, and Watkinson's testimony was not given until after the expiration of the statutory period, and he does not pretend to say that there was any identification of the debt made by him at the time. Becker v. Oliver, 111 Fed. 672, 49 C. C. A. 533; Rosencrance v. Johnson, 191 Pa. 520, 43 Atl. 360. It further appears from the testimony of the claimant that the last payment made by Fargo to the Mutual Rubber Company was made prior to the insolvency of the Fargo corporation, and that no endeavor was made after the failure of that corporation to collect the amount due by Watkinson, notwithstanding the fact that the collection of Watkinson's indebtedness had been placed in his hands. No credit was given to Watkinson, or to the Mutual Rubber Company, for the payments referred to or either of them, and the testimony of E. A. Fargo, the claimant's brother, shows that he never knew of the payments and that they were not accounted for by Frank M. Fargo.

The rule with respect to part payments is that, in order to give the act the effect of a new promise, the payment must be on account of the debt in suit. The debt must be identified by the debtor at the time of payment, and payment must be made to the creditor or his known agent under circumstances which would warrant a finding as a question of fact that the debtor intended to thereby and then recognize the debt as existing and was willing to pay it. Rosencrance v. Johnson, 191 Pa. 520, 43 Atl. 360; Becker v. Oliver, 111 Fed. 672, 49 C. C. A. 533; Kunkel v. Kolb, 6 Wkly. Notes Cas. (Pa.) 48; Lowrey v. Robinson, 141 Pa. 189, 21 Atl. 513; Coleman v. Forbes, 22 Pa. 156, 60 Am. Dec. 75. The date of the last payment made to the Mutual Rubber Company was May 31, 1895, and, as six years and over had elapsed when the petition in bankruptcy was filed, the debt, to whomsoever it was due, is barred. I should, perhaps, add that it appears from the testimony that the books of the Fargo corporation were purchased from the receiver of that company at public sale by the claimant and his brother. Whilst this circumstance has been referred to in the argument, I do not understand it to be contended that the claim should be allowed on this ground. The admitted facts are that Watkinson's name does not appear on the books of the Fargo corporation. That corporation apparently never considered that it had any claim against him apart from its books. In each instance of payment made by Watkinson the checks, though sent under cover to Frank M. Fargo, were drawn to the order of the rubber company, receipts for the amounts paid were sent him by Frank M. Fargo as treasurer of the rubber company, not as treasurer of the Fargo corporation, and the money paid was when and as received entered to the credit of the rubber company in account with the Fargo corporation, and not to the credit of Watkinson. The claimant, if entitled to recover at all, must recover on his pleadings. He could not in any event recover on evidence showing a different cause of action. The claim has not been amended, nor would an amendment of this nature be allowed after the expiration of a year subsequent to the bankruptcy. In re Lansaw, 9 Am. Bankr. Rep. 167, 118 Fed. 365; In re Moebius, 8 Am. Bankr. Rep. 590, 116 Fed. 47.

For the reasons above stated, the exceptions are sustained, and the claim disallowed.

Greenwald & Mayer, for trustee.

E. O. Michener, for claimant.

HOLLAND, District Judge. The evidence, in our opinion, amply sustains the referee in his findings of facts, upon which he was warranted in dismissing the claim. For the reasons given in his opinion, sent up with the papers on the re-view, his action in the matter is affirmed.